# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01246-SCT

*VICKI D. WHITE*

*v.*

*JOHN R. WHITE*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/2008 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ADAM A. PITTMAN |
| | HELEN BAGWELL KELLY |
| ATTORNEY FOR APPELLEE: | GREGORY D. KEENUM |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 01/28/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     Finding that the chancery court properly had jurisdiction of this matter, applied the proper legal standard, and committed no manifest error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The complicated procedural history of this case is as follows:  John R. White ("Rusty") and Vicki D. White ("Vicki") were divorced on January 16, 1998.  Rusty and Vicki agreed that they would share joint legal custody of John Andrew ("Andrew"), born September 28, 1988; Kimberly Elizabeth ("Kim"), born July 23, 1990; and Alexander Reed ("Alex"), born December 5, 1994; and that Vicki would have physical custody of the

children. Vicki moved with the three children to Benbrook, Texas, in January 1999. In 2001, without either party consulting the chancery court, the parties' oldest child, Andrew, moved back to Mississippi to live with Rusty.

¶3.     On May 1, 2003, Rusty filed a Petition to Modify the Divorce Decree seeking custody of the children because Vicki had moved with the children to Texas, and because Andrew had been living with him for two years before the petition was filed. No process was had nor action taken on this petition. The parties' youngest son, Alex, remained with Vicki in Texas from the time she moved in 1999 until a period of extended visitation with Rusty began in June 2006.

¶4.     On July 20, 2006, Judge Jacqueline Mask signed an order appointing Lisa Koon guardian ad litem and entered an order granting emergency custody of the three children to Rusty. The order referenced a motion to modify the original decree and a request for an emergency order on file, but these motions were not in the case file, nor does the record include any proof that the order was served on Vicki.

¶5.     On July 26, 2006, the three chancellors of the First Chancery Court District recused and Kenneth Burns was appointed as special chancellor in this case.[1] On September 25, 2006, Rusty filed a Petition for Modification of Final Decree seeking custody of the children and related relief, but no process was had on this petition.

¶6.     In October 2006, Rusty and Vicki agreed that Alex would visit Vicki in a hotel room in Corinth, Miss. Without informing Rusty, Vicki took Alex back to Texas in the middle of the night, and refused to take calls on her cell phone from Rusty or the guardian ad litem.

---

[1]Rusty White is a practicing attorney in the First Chancery Court District.

On October 16, upon petition from Rusty, the Chancery Court found Vicki to be in willful contempt of the court's order, granted emergency custody to Rusty, and ordered the immediate return of Alex to Rusty, but no process was ever served on Vicki.

¶7. Vicki made her first appearance in this proceeding on November 21, 2006, when she filed her Motion to Dissolve Order Granting Emergency Custody. The emergency temporary order was set aside on December 15, 2006, and the terms of the original divorce decree were reinstated. On the same day, Rusty filed a motion for a Rule 65 hearing. *See* Miss. R. Civ. P. 65. Vicki filed her response, along with a motion to dismiss based on lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and *forum non conveniens*. *See* Miss. Code Ann. §§ 93-27-101 to 93-27-401 (Rev. 2004).

¶8. On January 22, 2007, Vicki filed a custody action in Texas state court. On January 27, 2007, the Chancery Court of Tishomingo County entered an order for a home study of Vicki to be performed through the Tishomingo County Department of Human Services and the State of Texas.

¶9. The Court issued its opinion on May 27, 2008, awarding Rusty custody of Alex. The chancellor found the following to constitute a material change in circumstances adversely affecting Alex: (1) Vicki's violation of the July Order when she took Alex back to Texas in the middle of the night in October of 2006; (2) Alex's excessive absences from school; (3) Vicki's lack of cooperation with the guardian ad litem; (4) Vicki's lack of ability to discipline Alex; and (5) Vicki's allowing Kim and her boyfriend to share a bedroom while she had Alex in her custody. The chancellor performed an ***Albright*** analysis, and concluded that the best interests of Alex would be served by Rusty having primary physical custody of

3

Alex with Vicki having reasonable visitation rights. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). Vicki now appeals the chancellor's decision, and raises the following issues.

## ISSUES

I. Whether the chancery court erred in determining custody of Alex because the court lacked jurisdiction over his custody determination.

II. Whether the court erred in awarding custody of Alex to Rusty.

## ANALYSIS

¶10. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *R.K. v. J.K.*, 946 So. 2d 764, 772 (Miss. 2007) (citations omitted). However, whether the chancery court has jurisdiction to hear a particular matter is a question of law which this Court reviews de novo. *In re Guardianship of Z.J.*, 804 So. 2d 1009, 1011 (Miss. 2002) (citing *Burch v. Land Partners, L.P.*, 784 So. 2d 925, 927 (Miss. 2001)).

### I. Jurisdiction

¶11. Vicki raises several arguments that the Chancery Court of Tishomingo County lacked jurisdiction to hear the case: that (1) Rusty failed to make disclosures required by the UCCJEA; (2) the chancellor erred by failing to consider Mississippi Code Section 93-27-202(a) (Rev. 2004); (3) the chancellor should have transferred the proceedings to Texas on the basis of *forum non conveniens*; and (4) the chancery court should have declined to exercise jurisdiction because Rusty has engaged in unjustifiable conduct. We find that the chancery court properly exercised jurisdiction over this case.

4

### A.     UCCJEA Disclosures

¶12.    Vicki first argues that the chancery court lacked jurisdiction to determine custody of Alex because Rusty failed to make disclosures under oath as required by the UCCJEA. A provision of the act, codified at Mississippi Code Section 93-27-209 provides:

(1)     Subject to any law providing for the confidentiality of procedures, addresses, and other identifying information, in a child custody proceeding, each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five (5) years, and the names and present addresses of the persons with whom the child has lived during that period. The pleading or affidavit must state whether the party:

   (a)     Has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child and, if so, identify the court, the case number, and the date of the child custody determination, if any;

   b)     Knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding; and

   (c)     Knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child and, if so, the names and addresses of those persons.

(2)     If the information required by subsection (1) is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished.

Miss. Code Ann. § 93-27-209 (Rev. 2004) (emphasis added). Vicki argues that Rusty's failure to provide such information deprived the chancery court of jurisdiction.[2] Vicki's argument must fail for two reasons.

¶13. First, the chancery court's jurisdiction is set by the Mississippi Constitution, and cannot be diminished by statute. *See* Miss. Const. art. VI, § 159. Second, the plain language of Section 93-27-209(2) provides that, in the event the required disclosures are not filed, the court *may* stay the proceeding. This issue is not jurisdictional, was within the sound discretion of the chancellor, and this argument is without merit.

**B**.     **Miss. Code Ann. § 93-27-202**

¶14. Vicki argued in her motion to dismiss and at the hearing on the matter that the Chancery Court of Tishomingo County lacked jurisdiction under Mississippi Code Section 93-27-202. The statute provides that a court of this state which has made an initial child custody determination shall have "continuous, exclusive jurisdiction over the determination until

(a)     A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.

Miss. Code Ann. § 93-27-202 (Rev. 2004). The record includes no order from a court of this state making a determination that "neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state." Because

---

[2]Vicki relies on the case of ***Marr v. Adair***, 841 So. 2d 1195 (Miss. Ct. App. 2003). However, the ***Marr*** court applied a provision of the now-repealed Uniform Child Custody Jurisdiction Act (UCCJA).

Rusty continuously has resided in Mississippi, it was within the chancellor's discretion to determine that both the child and Rusty had a "significant connection with this state." Therefore, the chancery court properly has retained continuous, exclusive jurisdiction over this matter, and this argument is without merit.

### C.    *Forum Non Conveniens*

¶15.    Vicki's next assignment of error is that the chancellor abused his discretion by failing to decline to exercise jurisdiction over this case on the basis of *forum non conveniens*.[3]

---

[3]    (1)  A court of this state which has jurisdiction under this chapter to make a child custody determination **may** decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

(2)  Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(a)    Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(b)    The length of time the child has resided outside this state;

(c)    The distance between the court in this state and the court in the state that would assume jurisdiction;

(d)    The relative financial circumstances of the parties;

(e)    Any agreement of the parties as to which state should assume jurisdiction;

(f)    The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

¶16.     Evidence on the issue was presented at the hearing on Vicki's motion to dismiss, and the court gave Rusty's counsel an additional fourteen days to develop the issue. However, the court never issued a definitive ruling. Vicki argues that trial court erred by not conducting an analysis pursuant to Section 93-27-201, or alternatively, that "the Court's denial that Mississippi is an inconvenient forum is not supported by substantial evidence and is therefore an abuse of the Chancellor's discretion." However, nothing in the record suggests that the chancellor abused his discretion by failing to grant this motion, and therefore, this argument is without merit.

### D.     Unjustifiable Conduct

¶17.     Vicki next argues that, based on Mississippi Code Section 93-27-208, the trial court should have denied jurisdiction over Alex's custody determination because of "unjustifiable conduct" on the part of Rusty. Section 93-27-208 provides that "if a court of this state has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction . . . ." Miss. Code Ann. § 93-27-208 (Rev. 2004). As discussed above, Mississippi has continuous, exclusive jurisdiction over this matter because it entered the initial child-custody order, not because of

---

(g)     The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(h)     The familiarity of the court of each state with the facts and issues in the pending litigation.

Miss. Code Ann. § 93-27-201 (Rev. 2004) (emphasis added).

any alleged unjustifiable conduct on the part of Rusty. Therefore, this issue is wholly without merit.

## II. Whether the court erred in awarding custody of Alex to Rusty.

¶18. Finding that the chancery court properly exercised jurisdiction over this case, we next turn to Vicki's argument that the chancellor erred in awarding custody of Alex to Rusty. Vicki raises three arguments: (1) that the court erred in finding a material change in circumstances as to Alex; (2) that the court failed to make any findings that the change in circumstances had an adverse effect upon Alex; and (3) the chancellor's findings under the *Albright* analysis were not supported by substantial evidence, were manifestly wrong, or clearly erroneous. Finding no manifest error, we affirm the judgment of the chancellor.

¶19. The law on custody modification is well established. "[A] non-custodial party must prove [that]: (1) there has been a substantial change in circumstances affecting the child; (2) the change adversely affects the [child's] welfare; and (3) a change in custody is in the best interest of the child." *Johnson v. Gray*, 859 So. 2d 1006, 1013 (Miss. 2003) (citing *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997)). "A modification of custody is warranted in the event that the moving parent successfully shows that an application of the *Albright* factors reveals that there had been a material change in those circumstances which has an adverse effect on the child and modification of custody would be in the child's best interest." *Id.* (citing *Sanford v. Arinder*, 800 So. 2d 1267, 1272 (Miss. Ct. App. 2001)). When determining whether modification is necessary, all evidence shall be viewed in light of the totality of the circumstances. *Weigand v. Houghton*, 730 So. 2d 581, 585 (Miss. 1999) (citing *Ash v. Ash*, 622 So. 2d 1264, 1266 (Miss. 1993)).

9

### A. Material Change in Circumstances

¶20. Vicki argues that the chancellor erred in finding that there had been a material change in circumstances regarding Alex's care. The chancellor found the following to be a material change in circumstances adversely affecting Alex: Vicki's violation of the July 2006 order when she removed Alex from his father's care and took him to Texas; Alex's excessive absences from school; Vicki's lack of cooperation with the guardian ad litem; Vicki's failure to properly discipline Alex; and Vicki's allowing Kim and her boyfriend to share a bedroom while she had Alex's custody. Each finding will be discussed individually below.

*July 2006 Order*

¶21. Vicki first argues that the chancellor erred by considering her violation of the July order in his material-change analysis, because that order and the finding of contempt against her for violation of that order subsequently were set aside. Vicki also cites *Mixon v. Sharp*, 853 So. 2d 834, 838 (Miss. Ct. App. 2003), for the proposition that "changing child custody is not an appropriate punishment for contempt." However, "[t]he fact that such order is erroneous or irregular or improvidently granted does not justify a person in failing to abide by its terms." *Ellis v. Ellis*, 840 So. 2d 806, 811 (Miss. Ct. App. 2003) (citing *Ladner v. Ladner*, 206 So. 2d 620, 623 (Miss. 1968)). This case also is distinguishable from *Mixon*, which involved a mother interfering in a father's visitation rights. *Mixon*, 853 So. 2d at 837. Vicki removed Alex in the middle of the night in violation of a court order, and then refused to accept phone calls from either Rusty or the guardian ad litem. Interference with the exercise of custody can constitute a material change in circumstances. *See Davis v. Davis,* 17 So. 3d 114 (Miss. Ct. App. 2009); *Ellis v. Ellis*, 952 So. 2d 982, 989-90 (Miss. Ct. App.

2006). Additionally, nothing in the record suggests that the award of custody to Rusty was to punish Vicki. It was not error for the chancellor to consider this matter and find it to be a material change in circumstances.

*Missed School*

¶22. Vicki next argues that, with respect to the missed school days, the chancellor "failed to recall that Alexander had missed many of those days as a result of health issues." Testimony was given by both sides as to the necessity of Alex's absences from school, including testimony by Rusty that Alex had missed only two days of school since Alex had been in his care. The chancellor concluded that "Alexander does not reach his full potential with Vicki." Testimony also was given at trial that Alex's school performance had deteriorated substantially compared to his early years of school. It was not manifest error for the chancellor to consider this issue, and his factual findings were supported by substantial evidence.

*Lack of Cooperation with the Guardian ad Litem*

¶23. Vicki next argues that it was improper for the chancellor to "penalize [her] for something she was not responsible for." Vicki argues that there is nothing in the record that reflects that Vicki obstructed or otherwise defeated any efforts by the guardian ad litem to arrange a home study. However, the guardian ad litem's report states that Vicki missed appointments and did not regularly make Alex available to speak on the phone. Vicki also failed to deliver records requested by the guardian ad litem. The chancellor's findings were supported by substantial evidence, and this argument is without merit.

11

*Vicki's Discipline Skills*

¶24.   Vicki next argues that there was no evidence that her knowledge of discipline had changed since the entry of the original divorce decree in 1998.  In effect, Vicki argues that her lack of knowledge has not changed since the divorce.  Thus, she argues, it was error for the chancellor to consider her lack of knowledge as a material change in circumstances.

¶25.   While it may be true that Vicki's discipline skills have not changed, Alex's needs have changed.  Alex was three years old when the original custody decree was entered; he is now a fourteen-year-old boy. It was not error for the chancellor to consider Vicki's admitted lack of knowledge of how to discipline a fourteen-year-old Alex as part of his material-change-in circumstances and best-interest analysis.

*Kim's Cohabitation*

¶26.   Finally, Vicki argues that the chancellor erred by considering Kim's cohabitation while she had Alex in her custody, because there was no showing that this had any adverse impact on Alex.  However, when determining whether or not there has been a material change in circumstances with an adverse impact on the child, the chancellor must look at the totality of the circumstances. ***Stark v. Anderson***, 748 So. 2d 838, 843 (Miss. Ct. App. 1999). Therefore, the chancellor did not err in considering this issue in his material-change analysis.

¶27.   Vicki next argues that, even if there had been a material change in circumstances, the court failed to make any specific findings that the change in circumstances outlined by the court had any adverse effect on Alex.  Vicki cites ***Sturgis v. Sturgis***, 792 So. 2d 1020 (Miss. Ct. App. 2001), and ***Ortega v. Lovell***, 725 So. 2d 199 (Miss. 1998), for the proposition that trial courts are required to make specific findings with regard to the adverse-material-change

12

analysis. Vicki argues that the chancellor failed to make any specific findings that the circumstances outlined by the court had any adverse effect upon Alex. However, the chancellor stated, "The Court finds the following to be a material change in circumstances adversely affecting Alex:" before enumerating his findings. This argument lacks merit.

**B.** *Albright* **Analysis**

¶28. If the court finds an adverse material change, then the next step is to apply the *Albright* factors to determine whether modification is in the child's best interest. *Sturgis v. Sturgis*, 792 So. 2d 1020, 1025 (Miss. Ct. App. 2001). The *Albright* factors, used to determine what is in the best interest of the child in regard to custody, are: (1) age, health, and sex of the child; (2) a determination of the parent who had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which parent has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) the moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶29. Vicki argues that the chancellor's findings as to the parenting-skills factor, child-preference factor, and other factors are not supported by substantial evidence or are erroneous. The chancellor found that the parenting-skills factor favored Rusty because Alex was an honor student while with Rusty and missed little school; however, when with Vicki,

13

Alex frequently was absent from school and did not do as well as he could academically. Vicki argues that these findings are not supported by substantial evidence, because Alex was in Rusty's care for only four months of school. This argument is without merit, however, as four months of school records are substantial evidence on which the chancellor could base his finding of fact as to this factor.

¶30. The chancellor discounted Alex's stated preference to live with Vicki because he found that Alex's desire is "motivated by his mother not properly disciplining him." Vicki argues that this finding was not supported by substantial evidence. However, Vicki admitted that she did not know how to discipline Alex; that her sole method of discipline was to prohibit Alex's guitar lessons, and that she realized that this discipline does not work. This determination was based on substantial evidence, and this issue is without merit.

¶31. Finally, Vicki argues that it was that it was error in the "other-factors" factor for the chancellor to consider the guardian ad litem's recommendation that Rusty should receive custody of Alex. Vicki argues that the chancellor should discount this report because "[it] suffered substantially because much of the information necessary for her to perform her own independent investigation was in Texas." However, Vicki cites no authority for the proposition that the chancellor's reliance on the report was in error. Further, the difficulties faced by the guardian ad litem were substantially Vicki's fault, as the chancellor found that Vicki had failed to cooperate with the guardian ad litem, did not submit to a home study as directed by the court, and did not return phone calls or provide records that the guardian ad litem had requested. On appeal, we cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence.

14

*Carter v. Carter*, 735 So. 2d 1109, 1114 (Miss. Ct. App. 1999). This argument is without merit.

## CONCLUSION

¶32.    The trial court properly exercised jurisdiction over this matter. The chancellor applied the correct legal standard, and his decision to modify custody from Vicki to Rusty is based upon substantial evidence. Therefore, the judgment of the chancery court is affirmed.

¶33.    **AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**