KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶ 32. Because Mississippi Code Section 93-15-105(1) unconstitutionally diminishes the jurisdiction of the chancery court to hear and determine petitions for adoption, I respectfully dissent. It is elementary that a contested adoption cannot take place unless parental rights have been terminated. Section 93-15-105(1) purports to prevent chancery courts from terminating parental rights with respect to any child under the jurisdiction of a youth court in an abuse or neglect proceeding.
 
 Miss. Code Ann. § 93-15-105
 
 (1) (Supp. 2017). But if a chancery court cannot terminate the parental rights of parents who contest an adoption, then it is stymied in the exercise of its constitutional prerogative to adjudicate a petition for adoption. Therefore, I would hold that Section 93-15-105(1) is unconstitutional and void.
 

 ¶ 33. Section 93-15-105(1) is part of a 2016 legislative enactment that revised our state's law governing termination of parental rights, now known as the Mississippi Termination of Parental Rights Law, 2016 Miss. Laws Ch. 431 (effective April 18, 2016). Section 93-15-105(1) provides: "The chancery court has original exclusive jurisdiction over all termination of parental rights proceedings except that a county court, when sitting as a youth court with jurisdiction of a child in an abuse or neglect proceeding, has original exclusive jurisdiction to hear a petition for termination of parental rights against a parent of that child."
 
 Miss. Code Ann. § 93-15-105
 
 (1) (Supp. 2017). M.A.S. argues that this statute is unconstitutional because it is in conflict with the Mississippi Constitution of 1890, which vests in the chancery court the authority to adjudicate adoptions.
 
 See
 
 Miss. Const. Art. 6 § 159 (d).
 

 ¶ 34. I agree with the majority that, because M.A.S.'s constitutional challenge raises a question of subject-matter jurisdiction, the issue is not procedurally barred despite her failure to bring it to the attention of the chancery court. But unlike the majority, I would hold that Section 93-15-105(1) is unconstitutional beyond a reasonable doubt. Although state statutes come to us clothed with a heavy presumption of constitutional validity, legislation that is in palpable conflict with the constitution is nevertheless void.
 
 In the Interest of T.L.C.
 
 ,
 
 566 So.2d 691
 
 , 696 (Miss. 1990),
 
 overruled on other grounds
 
 . The presumption of constitutionality may be overcome if the statute is shown to be unconstitutional beyond a reasonable doubt.
 

 Id.
 

 ¶ 35. Because a contested adoption cannot take place without terminating parental rights, and our Constitution vests jurisdiction of minors' business, including adoptions, in the chancery courts, Section 93-15-105(1) is in palpable conflict with our Constitution and it is facially unconstitutional beyond a reasonable doubt. Without the ability to terminate parental rights, a chancery court cannot exercise its constitutional authority to adjudicate a contested adoption petition. This Court held as much in
 
 Mississippi Department of Human Services v. Watts
 
 ,
 
 116 So.3d 1056
 
 , 1060-61 (Miss. 2012). In
 
 Watts
 
 , the
 youth court had acquired jurisdiction of two minor children taken into custody by the Jackson County Department of Human Services after allegations of neglect.
 

 Id.
 

 at 1057
 
 . The youth court proceedings culminated in an order for reunification with the children's natural father.
 

 Id.
 

 The children's foster parents filed a petition in chancery court for termination of parental rights and adoption, and the Department argued that the chancery court had no jurisdiction to adjudicate the adoption petition due to the youth court's reunification order.
 

 Id.
 

 ¶ 36. This Court held that the chancery court had jurisdiction over the adoption proceedings.
 

 Id.
 

 We recognized that "The Mississippi Constitution gives chancery courts 'full jurisdiction' [over] ... minor's business," and that this constitutional jurisdiction "cannot be diminished by statute."
 
 [10]
 

 Id.
 

 at 1058
 
 (quoting Miss. Const. Art 6 § 159 ;
 
 White v. White
 
 ,
 
 26 So.3d 342
 
 , 346 (Miss. 2010) ). We found that, in rendering a judgment of adoption, the chancellor has authority to terminate parental rights.
 
 Id.
 
 at 1059.
 

 ¶ 37. After examining the statute that undertakes to set out the youth court's exclusive jurisdiction over abused and neglected children,
 
 [11]
 
 and the statute that grants the chancery court exclusive jurisdiction over adoptions,
 
 [12]
 
 and related statutes, many of which now have been repealed or amended, we discussed the case of
 
 In re Beggiani
 
 ,
 
 519 So.2d 1208
 
 (Miss. 1988).
 
 Id.
 
 at 1058-59. There, the Court was confronted with another jurisdictional contest between youth court and chancery court.
 
 Beggiani
 
 ,
 
 519 So.2d at 1209
 
 . In
 
 Beggiani
 
 , foster parents had petitioned for adoption of a child under the jurisdiction of the youth court in abuse or neglect proceedings.
 

 Id.
 

 After the youth court had granted custody to the child's maternal grandmother, the chancery court granted the foster parents' petition for adoption.
 

 Id.
 

 The grandmother argued that the youth court had priority jurisdiction of the entire controversy, barring the adoption proceedings.
 
 Beggiani
 
 held that the priority jurisdiction rule did not apply because abuse or neglect proceedings involve a different subject matter from adoption proceedings, finding:
 

 [I]t has been recognized that adoption proceedings are entirely separate and distinct statutory proceedings neither connected with nor controlled by the prior custody awards of another court.
 
 Lewison v. State
 
 ,
 
 193 So.2d 53
 
 (Fla. Dist. Ct. App. 1966). Even though a juvenile court may have obtained and retained jurisdiction over a custody case by an initial adjudication of dependency and a custody award, jurisdiction of another court in a subsequent adoption proceeding is unaffected, and the juvenile court could not act so as to thwart the adoption proceedings.
 

 Id.
 
 at 1211 (citation omitted). This Court held that the chancery court had assumed jurisdiction of the adoption proceedings properly despite the youth court's exercise of jurisdiction over the child in the abuse and neglect proceedings and despite the
 youth court's entry of a custody award.
 
 Id.
 
 at 1211. Thus,
 
 Beggiani
 
 recognized that abuse or neglect of a child is an entirely different subject matter from adoption of a child, and that "an adoption is superior to a custody award."
 
 Id.
 
 at 1213-14.
 

 ¶ 38. After analyzing
 
 Beggiani
 
 ,
 
 Watts
 
 set forth the constitutional underpinning of its holding that chancery courts may exercise their jurisdiction over adoptions even if a youth court has assumed jurisdiction over the child in an abuse or neglect proceeding.
 
 Watts
 
 ,
 
 116 So.3d at 1060-61
 
 .
 
 Watts
 
 held that "[t]he statutes which bestow jurisdictional powers on the Youth Court do not diminish the Chancery Court's jurisdictional authority granted by our Constitution. Therefore, even though the Youth Court properly exercised jurisdiction over proceedings related to these abused and neglected minors, its jurisdiction did not extend to the Wattses' petition for adoption, and the Youth Court may not exercise its jurisdiction in a manner 'so as to thwart the adoption proceedings.' "
 

 Id.
 

 (citing
 
 Beggiani
 
 ,
 
 519 So.2d at
 
 1211 ).
 

 ¶ 39. The majority finds that
 
 Watts
 
 has no lasting validity after the legislature's enactment of Section 93-15-105(1). But, although
 
 Watts
 
 relied on statutes and case law, our decision in that case rested also on constitutional grounds.
 
 See
 

 Watts
 
 ,
 
 116 So.3d at 1060
 
 ("we are more persuaded that the dictates of our Constitution, our own caselaw, and the best interests of these two children" mandated that the chancery court assume jurisdiction over the contested adoption proceedings despite the youth court's assertion of jurisdiction over the children in abuse and neglect proceedings).
 
 Watts
 
 recognized that the chancery court's constitutional jurisdiction over minors' business, which includes adoptions, cannot be diminished by the statutes establishing youth court jurisdiction.
 
 [13]
 

 Id.
 

 at 1060-61
 
 . Because
 
 Watts
 
 's delineation of chancery court jurisdiction rested upon constitutional grounds, the legislature cannot circumvent this Court's decisions by enacting contrary legislation with the effect of diminishing the constitutionally established chancery court's jurisdiction.
 

 ¶ 40. It is beyond question that Section 93-15-105(1) does diminish the chancery court's jurisdiction. The majority finds that, because Section 93-15-105(1) removes only the chancery court's jurisdiction to terminate parental rights, its jurisdiction to adjudicate adoption petitions remains undisturbed. But because no contested adoption can take place unless the rights of the natural parents have been terminated, the majority's conclusion is specious. Of course Section 93-15-105(1) purports to reduce the chancery court's jurisdiction, as this very case illustrates. Applying the new statute, the chancellor found that, because the youth court had jurisdiction over D.C.G.P. in an abuse or neglect proceeding, the chancery court lacked jurisdiction to grant a contested adoption since the chancellor could not terminate parental rights. So the chancery court exercised the only option left to it by the new statute and dismissed the adoption petition.
 

 ¶ 41. After today's decision, in those counties in which the county court sits as a youth court, children under the youth court's jurisdiction in abuse or neglect proceedings are uniquely situated because those children will not be eligible for adoption in a contested case absent the action of the youth court. The Mississippi Termination of Parental Rights Law provides no statutory process for coordination between the actions of the youth court and the chancery court, which are two distinct courts with two different judges, respecting the status of such a child or the eligibility of the child for adoption. A potential adoption proceeding is further complicated by the fact that youth court proceedings and records are confidential, although a youth court can order the disclosure of youth court records to a court in which an adoption is pending if the youth court determines that disclosure is required in the best interests of the child.
 
 See
 

 Miss. Code Ann. § 43-21-251
 
 ;
 
 Miss. Code Ann. § 43-21-261
 
 (1)(b) (Rev. 2015). As it stands, the chancery court, which is the court with constitutional jurisdiction over adoptions, must dismiss any adoption petition concerning a child under the jurisdiction of a county court that sits as a youth court in an abuse or neglect proceeding.
 

 ¶ 42. Youth courts serve an important judicial function in adjudicating abuse or neglect proceedings. But the legislature cannot expand youth court jurisdiction in a way that encroaches upon the chancery court's constitutional jurisdiction over the distinct subject matter of adoptions. I would hold that Section 93-15-105(1), which purports to divest the chancery court of jurisdiction until and unless the youth court has terminated parental rights, is constitutionally infirm. Therefore, I would reverse the decision of the chancery court and remand for further proceedings regarding the adoption petition filed by M.A.S.
 

 KING, J., JOINS THIS OPINION.
 

 Because chancery courts were established by the Mississippi Constitution, they are constitutional courts, and their jurisdiction cannot be diminished. Miss. Const. Art. 6, § 159. Youth courts are inferior courts created by statute pursuant to Article 6, Section 172 of the Mississippi Constitution, which allows the legislature to create "such other inferior courts as may be necessary, and abolish the same whenever deemed expedient." Miss. Const. Art. 6, § 172. They have been deemed "special courts."
 
 In the Interest of T.L.C.
 
 ,
 
 566 So.2d at 696
 
 .
 

 Miss. Code Ann. § 43-21-151
 
 (Rev. 2015).
 

 Miss. Code Ann. § 93-17-3
 
 (4) (Rev. 2013).
 

 As the majority recognizes, this Court has carved out an exception to chancery court jurisdiction over minors' business by finding that the statute giving youth courts exclusive original jurisdiction over abused and neglected children is constitutional.
 
 In the Interest of T.L.C.
 
 ,
 
 566 So.2d at 696
 
 . But until today's decision, the chancery court's jurisdiction over adoptions was inviolate. After this decision, any child under the jurisdiction of a county court sitting as a youth court in abuse or neglect proceedings cannot be adopted over his or her natural parents' objection unless and until the youth court decides to terminate parental rights.